# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class SEAN A. GRAY**
**United States Army, Appellant**

ARMY 20180353

Headquarters, I Corps
Lanny J. Acosta, Jr., Timothy P. Hayes, Jr., and James P. Arguelles, Military Judges
Colonel Steven C. Henricks, Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA; Matthew Flynn, Esquire (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief).

28 October 2019

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

Appellant sexually assaulted his adopted step-daughter, DG, on numerous occasions when she was between the ages of thirteen and sixteen.[1] At sixteen years old, DG gave birth to appellant's biological daughter and step-granddaughter.

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of six specifications of sexual assault of a child, two specifications of sexual assault, three specifications of assault consummated by a battery, one specification of adultery, and two specifications of violating a lawful general regulation, in violation of Articles 120b, 120, 128, 134, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 920, 928, 934, and 892. The military judge found the two specifications alleging Article 92 violations were an unreasonable multiplication of charges and conditionally dismissed one of the specifications (Specification 1 of Charge V ) pending final appellate review of the

(continued . . .)

Appellant, thirty-seven years old, a Sergeant First Class with thirteen years of service in the Army, and a 113 GT score, claims his trial defense counsel were ineffective in that they instructed him to plead guilty to offenses he did not commit, to lie in the stipulation of fact, and to provide false testimony during his providence inquiry. We ordered affidavits from appellant's trial defense counsel who deny appellant's assertions. Appellant requests a post-trial fact finding hearing to resolve alleged disputed questions of fact from the affidavits.

After a review of the entire record, including the affidavits from the trial defense counsel, appellant, and appellant's uncle, we determine a post-trial fact finding hearing is not necessary. We find no unethical behavior on the part of the defense counsel and conclude their representation was not ineffective. Accordingly, we affirm the findings and sentence.

## BACKGROUND

Appellant entered DG's life when she was six years old. He married her mother and adopted DG as his daughter, along with her three other siblings. The following discussion highlights appellant's sexual abuse of DG as admitted to by appellant in his stipulation of fact and thirty-five pages of providence inquiry with the military judge.

*Appellant's Sexual Abuse of DG from Thirteen to Sixteen Years Old*

When DG turned thirteen years old, appellant "tried to fight the sexual attraction [he] felt towards [DG]." On multiple occasions when she was thirteen, appellant would isolate DG from the rest of the family by bringing her to an empty bedroom in the house. Once in the bedroom, appellant would undress DG. He would direct her to lay down on a bed and he would digitally penetrate her. After a few minutes, appellant would proceed to insert his penis in her vagina.

Around DG's fourteenth birthday, appellant and DG's mother separated. Appellant moved from Alaska to Colorado and his wife moved with the children to Washington State. During his move to Colorado, appellant stopped to visit DG and her siblings for a month. During the visit, he rented a hotel room. On several occasions during this one month visit, appellant would isolate DG from her siblings in the hotel room. He would undress her, direct her to lay down on a bed, and he would digitally penetrate her. After a few minutes, appellant would proceed to

---

(. . . continued)
other specification (Specification 2 of Charge V). The military judge sentenced appellant to a dishonorable discharge and confinement for forty-four years. The convening authority approved the sentence as adjudged.

2

insert his penis in her vagina. On several occasions, appellant told DG that "she better not tell."

After these events, DG confided in friends at school that she was being sexually assaulted by her father. A police investigation ensued, and appellant denied the allegations. During DG's interview with police, she expressed she was uncomfortable and scared. During the course of the interview, DG would neither confirm nor deny that she was being sexually assaulted by appellant. Despite DG's outcry, appellant continued to sexually assault her.

Appellant visited DG and her siblings several times in Washington State when she was fifteen. Again, appellant would rent a hotel room and have DG and her siblings visit him at the hotel. On multiple occasions, appellant would isolate DG from her siblings and sexually assault her. On one of these occasions, DG cried during the assault. Appellant ignored her crying and sexually assaulted DG later, again, that same day, while the other children were sleeping.

Shortly after DG's sixteenth birthday, she and her siblings visited appellant for the summer in Colorado. During this summer visit, appellant continued to engage in sexual intercourse with DG. When she returned from visiting appellant, DG became very sick. She was taken to the hospital over the course of the next several months and treated for a variety of possible illnesses. Around Thanksgiving, doctors determined DG was twenty weeks pregnant with a conception date in the summer she visited appellant.

DG informed her mother that appellant was the father. Appellant denied he sexually assaulted his daughter and denied having sexual intercourse with her. At sixteen years old, DG gave birth. A paternity test confirmed appellant was the father.

*Appellant's Guilty Plea & Post-Trial Affidavits*

Appellant entered into a pretrial agreement to plead guilty to all of the aforementioned sexual assaults of DG.[2] As a result of the pretrial agreement, the government agreed to dismiss twenty other specifications, including three specifications of rape of a child against one of his other daughters, in violation of Article 120b, UCMJ, which each carried a maximum punishment of life without

---

[2] Appellant also pleaded guilty to three specifications of assaulting a subordinate soldier, Private E-2 (PV2) KD; one specification of committing adultery with PV2 KD; and two specifications of having an inappropriate relationship with PV2 KD in violation of Articles 128, 134, and 92, UCMJ.

eligibility for parole.[3]  As part of his pretrial agreement, appellant entered into a seven-page stipulation of fact which was admitted at trial.  In this stipulation, appellant admitted to the underlying facts for each of the charges to which he pleaded guilty.

Now on appeal, appellant alleges he engaged in only one act of consensual sexual intercourse with DG, after her sixteen birthday, which resulted in her pregnancy.  He claims, however, in his post-trial affidavit that he never sexually assaulted DG while she was between the ages of thirteen and sixteen.[4]

Appellant asserts he pleaded guilty to sexually assaulting DG because his defense counsel told him he "had to lie" because "a court-martial panel would not believe that the sex was consensual and [would find appellant] guilty with a lengthy sentence."  Appellant claims he told his defense counsel, during a recess in the middle of his providence inquiry, that "[he] was not comfortable lying to the military judge."  Appellant claims his defense counsel responded that "lying to the judge in order to get the benefit of the plea was in [his] best interest." After the military judge sentenced appellant to confinement for forty-four years, appellant claims his defense counsel told him, "[w]hen you get your appellate lawyer, you tell them what I made you do."[5]

---

[3] The specifications dismissed as a result of appellant's guilty plea allege offenses against appellant's other children and DG's mother:  three specifications of rape of a child, two specifications of sexual assault of a child, three specifications of sexual abuse of a child, nine specifications of assault consummated by a battery upon a child, one specification of aggravated assault upon a child, one specification of attempted assault upon a child, and one specification of assault consummated by a battery upon DG's mother in violation of Articles 120b and 128, UCMJ.

[4] We note appellant's affidavit to this court was submitted as an "*unsworn* declaration under penalty of perjury in accordance with 28 U.S.C. § 1746." (emphasis added).  Despite the unsworn nature of appellant's affidavit, we afford it the same weight as if it were a sworn affidavit.

[5] In support of his claim, appellant's uncle submitted an affidavit stating "[a]fter the sentence was announced, I walked into a back room with [appellant] and his lawyers. I witnessed [appellant's] lawyers tell [appellant] that the plea was not a good decision, and that they would tell [appellant's] appellate lawyers it was a bad decision[.]"  This affidavit was also submitted as an "unsworn declaration under penalty of perjury in accordance with 28 U.S.C. § 1746."  Despite the unsworn nature of appellant's uncle's affidavit, we afford it the same weight as if it were a sworn affidavit.

*Affidavits from Trial Defense Counsel*

Appellant's trial defense counsel submitted affidavits stating they never advised appellant to lie. In fact, trial defense counsel state they told appellant multiple times not to lie. As stated by defense counsel in her affidavit:

> [Appellant] initially said the sex with DG was consensual and that he was not sure of the exact date but thought it was after her 16th birthday, but before the guilty plea he changed that and admitted that the sex with DG was nonconsensual and that some of it was before she was 16 years old. Over the, approximately one year, and a half that I represented appellant, his version of events changed multiple times. . . . [I] told [appellant] what the evidence showed. . . . [I] told [appellant] multiple times that I did not want him to lie.

Appellant's defense counsel agreed with appellant's affidavit that they told him they did not think they would be successful at a contested trial, and if found guilty, he would likely receive a lengthy sentence. Defense counsel reiterated in their affidavits, "No one on the defense team advised [appellant] to lie or agree to factual inaccuracies. [I] did say that I thought a pretrial agreement was in his best interest." And, "[I] informed [appellant] that the law did not permit him to lie, that I advised him not to do so."

In a recess during the providence inquiry, trial defense counsel recall appellant expressing a concern that he was admitting to inaccurate facts. Defense counsel states appellant was again advised:

> We believed the [offer to plead guilty] would result in a more favorable outcome than a contested trial, we could not advise him to lie, and his two options were to answer affirmatively to the questions in the providence inquiry or to proceed to a contested trial. [Appellant] elected to proceed with the providence inquiry.

Defense counsel deny they told appellant, after the military judge announced his sentence, to tell his appellate attorney, "what I made you do." Defense counsel explains, "[I] told [appellant] he should be honest with his appellate attorney regarding his views of my performance."[6]

---

[6] Assuming appellant's claim is true, we do not find defense counsel's assessment

(continued . . .)

## LAW AND DISCUSSION

To establish an ineffective assistance of counsel claim, which we review de novo, an appellant must show: "(1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) the counsel's deficient performance gives rise to a 'reasonable probability' that the result of the proceeding would have been different without counsel's unprofessional errors." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)) (emphasis in original).

When we evaluate the first *Strickland* prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Appellant has the burden to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Appellant's affidavit to this court alleges his defense counsel were ineffective because they advised him: (1) to sign a pretrial agreement to plead guilty to offenses he did not commit, and (2) to sign an inaccurate stipulation of fact. The affidavits from appellant's defense counsel deny appellant's allegations.

Pursuant to *United States v. Ginn*, 47 M.J. 236, 244-45 (C.A.A.F. 1997), this court need only order a fact finding hearing to resolve conflicting affidavits when the case cannot be resolved through one of the five *Ginn* principles. We find the fourth and fifth *Ginn* principles, discussed in-depth below, are present in appellant's case. Accordingly, a fact finding hearing is not necessary and we determine appellant's claims of ineffective assistance of counsel are meritless.

---

(. . . continued)
of their own performance relevant to this court's determination. Whether a counsel is ineffective is an objective inquiry. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011). "Regardless of whether it is favorable or unfavorable, we give little weight to counsels' subjective assessment of their own performance and instead conduct an objective assessment of their performance." *United States v. Scott*, 2018 CCA LEXIS 522, *14 (Army Ct. Crim. App. 30 Oct. 2018) (mem. op.) (citing *Richter*, 562 U.S. at 109-10). "*Strickland*, however calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110 (citations omitted).

*Fourth Ginn Principle*

Under the fourth *Ginn* principle, even if an appellant's post-trial affidavit is factually adequate on its face, we may "discount those factual assertions and decide the legal issue" if "the appellate filings and the record as a whole compellingly demonstrate the improbability of those facts." *Id.* at 248 (quotation omitted). A review of the record as a whole, particularly appellant's pretrial agreement, stipulation of fact, and his responses to the military judge at trial, demonstrate the improbability of his post-trial allegations.

First, in appellant's offer to plead guilty, submitted to the convening authority, appellant states in the first paragraph that he recognizes his "moral and legal right to plead not guilty." At the end of appellant's offer to plead guilty, he states "this offer to plead guilty originated with me. No person has made any attempt to force or coerce me into making this offer." Appellant's signature appears at the end of the document. At trial, the military judge addressed these provisions with appellant and he confirmed his agreement to those statements.

Next, at appellant's guilty plea, the military judge confirmed with appellant that he voluntarily signed the stipulation of fact because he believed it was in his best interest and that the contents were true.[7] The military judge explained that if appellant disagreed with anything in the stipulation of fact, he should inform the military judge. The military judge gave appellant an eighteen-minute recess to review the stipulation of fact to ensure its accuracy. Upon returning from the recess, the military judge confirmed with appellant that he voluntarily signed the stipulation and that it was accurate. Despite these extensive discussions between appellant and the military judge, appellant did not express any hesitation to the military judge that the stipulation of fact was inaccurate or that he was coerced into pleading guilty.

Appellant also claims his defense counsel told him to lie in a recess during his providence inquiry. At the beginning of appellant's guilty plea, the military judge advised appellant that he should only plead guilty if he, was in fact, guilty. The military judge advised appellant that if he told the military judge anything untrue, his statements could be used against him for charges of perjury. Further, the military judge explained all of the elements of the offenses to which appellant pleaded guilty and instructed appellant to ask himself whether the element was true and whether he wanted to admit it was true. Appellant acknowledged all

---

[7] We pause to note that three weeks elapsed between appellant signing his stipulation of fact and his guilty plea. During those three weeks, appellant had ample time to reconsider his decision to sign the stipulation of fact and his decision to plead guilty.

advisements, answered affirmatively that he wished to plead guilty, and stated he understood all of the elements for each offense.

During the recess appellant describes in his affidavit, his defense counsel advised him that without the plea deal he was facing a maximum sentence of life without eligibility for parole. His defense counsel evaluated the government's chance of convicting appellant as being high. "Telling an accused that the evidence against them is strong and the potential penalties for a conviction are great is not coercion." *United States v. Fernandez*, 2018 CCA LEXIS 546, *9 (Army Ct. Crim. App. 16 Nov. 2018) (mem. op.). Upon our review of the record of trial, defense counsel's evaluation of appellant's case appears more than reasonable.

Appellant proceeded with the providence inquiry and provided evidence for every element of every charge. The military judge then confirmed, again, that appellant was pleading guilty voluntarily and of his own free will, that no one threatened him or "tried in any way" to force him to plead guilty, and that he was satisfied with his defense counsel. The record as a whole compellingly demonstrates the improbability that appellant's defense counsel told him to lie.

*Fifth Ginn Principle*

Under the fifth *Ginn* principle:

> [W]hen an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

*Ginn*, 47 M.J. 248.

Appellant's affidavit does not provide a rational explanation as to why his signed offer to plead guilty, signed stipulation of fact and affirmations of its accuracy to the military judge, admissions on the record during his providence inquiry, and appellant's expression of satisfaction with his defense counsel to the military judge are not true.

We also note that nothing in appellant's unsworn statement during sentencing proceedings undermines his providence inquiry. In fact, appellant's unsworn statement further solidified his guilt. He described himself as "weak minded." Appellant directly addressed DG and stated, "I'm supposed to be your step-father

and protector. Instead, I misused your trust in me and my position to have sex with you. What I did was wrong."

Appellant's affidavit requests this court disbelieve all of his statements in his offer to plead guilty, stipulation of fact, his affirmations to the military judge, his detailed statements admitting all of the elements of the offenses, and his unsworn statement. Either appellant is lying to this court in his affidavit, or he committed perjury when he lied repeatedly to the military judge during his guilty plea.

Appellant's credibility is further damaged by his original denial that he did not have sexual intercourse with DG, which he was forced to retract when a DNA test proved he was the biological father of DG's child and that he was clearly lying. Appellant's defense counsel related a similar experience stating, "[appellant's] version of events changed multiple times."

The objective facts from the record do not support appellant's assertions. Appellant has failed to set forth facts that rationally explain why he would make such statements at trial but not upon appeal. We do not see the need for a hearing on the matter. Accordingly, we find neither deficient performance nor prejudice regarding appellant's representation.

## CONCLUSION

The finding as to Specification 1 of Charge V is DISMISSED conditioned upon Specification 2 of Charge V surviving "final judgment" of the proceedings. The remaining findings of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court